1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

11

12

13

14

15

| JAKEH PAUL CULVER, | CASE NO. 24-5119 DGE-RJB |
|---|---|
| Plaintiff, | ORDER ON DEFENDANT'S MOTIONS TO DISMISS |
| v. | |
| 3M COMPANY, | |
| Defendant. | |

16

17

18

19

20

    This matter comes before the Court on the Defendant 3M Company's ("3M") Motion to Dismiss or Alternatively Strike Paragraph 5 of Plaintiff's Complaint (Dkt. 10), 3M's motion to strike its motion to dismiss as moot (Dkt. 17), and 3M's Motion to Dismiss Plaintiff's Amended Complaint (Dkt. 18).  The Court has considered the pleadings filed regarding the motions and the remaining record.

21

22

23

24

    Originally filed in Pierce County, Washington Superior Court, the Plaintiff, Jakeh Culver, *pro se,* brings this case in connection with a non-compete covenant contained in his Employee Agreement with Defendant 3M and Defendant 3M's later actions.  Dkt. 1-2.  Defendant 3M

ORDER ON DEFENDANT'S MOTIONS TO DISMISS - 1

1   removed the case pursuant to 28 U.S.C. § 1332(a) based on the amount in controversy and the

2   diversity of the parties' citizenship.  Dkt. 1.  In his Amended Complaint, the Plaintiff asserts that

3   Defendant 3M violated RCW 49.62, *et. seq*., by enforcing a non-compete covenant after he was

4   terminated by layoff without payment of wages.  Dkt. 15 at 9.  The Plaintiff also makes claims

5   for various state statutory violations, torts, and breach of contract.  *Id*.

6   **PROCEDURAL HISTORY AND PRELIMINARY MATTERS**

7   Defendant 3M moved to dismiss the Complaint for failure to state a claim on February

8   15, 2024.  Dkt. 10.  The Plaintiff filed a response to the motion to dismiss (Dkt. 16) and an

9   Amended Complaint (Dkt. 15) on March 4, 2024.  The Plaintiff's response discusses allegations

10   in the Amended Complaint and contends that his Amended Complaint resolves the issues raised

11   in the motion to dismiss the Complaint.  Dkt. 16.  In its March 8, 2024 reply, Defendant 3M

12   urges the Court to either grant its motion to dismiss (Dkt. 10) or strike the motion to dismiss

13   (Dkt. 10) without prejudice to permit it to file a motion to dismiss the newly filed Amended

14   Complaint.  Dkt. 17.  Accordingly, Defendant 3M's motion to strike (Dkt. 17) should be granted

15   and its February 15, 2024 motion to dismiss (Dkt. 10) should be stricken without prejudice.

16   Further, the Amended Complaint (Dkt. 15) is the operative complaint rendering the Plaintiffs'

17   original Complaint "without legal effect." *Lacey v. Maricopa County,* 693 F.3d 896 (9th Cir.

18   2012).

19   On March 18, 2024, 3M filed its motion to dismiss the Amended Complaint for failure to

20   state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  Dkt. 18.  The Plaintiff filed a response (Dkt.

21   19) and 3M filed a reply (Dkt. 20).  Defendant 3M's Motion to Dismiss Plaintiff's Amended

22   Complaint (Dkt. 18) is ripe for decision.

23   **SOURCES OF FACTS AND FACTS**

24

1    **A.  SOURCES OF FACTS TO BE CONSIDERED ON A MOTION TO DISMISS**

2        When evaluating the sufficiency of a pleading under Fed. R. Civ. P. 12(b)(6), a court

3    reviews the allegations in the complaint and any attachments or documents incorporated by

4    reference.  *Koala v. Khosla,* 931 F.3d 887, 894 (9th Cir. 2019).  "Certain written instruments

5    attached to pleadings may be considered part of the pleading.  Even if a document is not attached

6    to a complaint, it may be incorporated by reference into a complaint it the plaintiff refers

7    extensively to the document or the document forms the basis of the plaintiff's claim."  *United*

8    *States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

9        Although for purposes of a motion to amend or for a motion to dismiss the court

10   ordinarily credits the allegations in the complaint as true, it need not "accept as true allegations

11   that contradict matters properly subject to judicial notice," or in a complaint's attachment, or

12   incorporated by reference into the complaint.  *Gonzalez v. Planned Parenthood of Los Angeles,*

13   759 F.3d 1112, 1115 (9th Cir. 2014); *Steckman v. Hart Brewing, Inc.,* 143 F.3d 1293, 1295-96

14   (9th Cir. 1998)(the court is "not required to accept as true conclusory allegations which are

15   contradicted by documents referred to in the complaint").

16       The following facts are taken from the Amended Complaint (Dkt. 15), its attachments

17   (Dkts. 15-1-15-6), and a document incorporated by reference in the Amended Complaint – the

18   Employee Agreement (Dkt. 11-1) between Plaintiff Culver and 3M.  There is no allegation that

19   the Employee Agreement is anything other than what it purports to be – a copy of the signed

20   agreement.  Further, the Plaintiff relies extensively on the Employment Agreement for some of

21   his claims.  *Richie* at 908.

22   **B.  FACTS**

23

24

ORDER ON DEFENDANT'S MOTIONS TO DISMISS - 3

1         According to the Amended Complaint, on April 13, 2013, the Plaintiff began working for

2    3M.  Dkt. 15 at 4.  He signed the Employee Agreement which included a non-compete covenant

3    in section 3(f).  *Id*.  Under this covenant, for a period of two years after the termination of his

4    employment, the Plaintiff agreed to not render certain services "directly or indirectly" to a

5    competitor (also referred to in the Employee Agreement as a "conflicting organization").  Dkt.

6    11-1 at 4.  The covenant provided that if he intended to accept an offer of employment from a

7    competitor that may cause him to render covered services to a competitor, he would

8    "immediately disclose to 3M the name and location of the employer and the time [he would]

9    begin to render such services."  *Id*.  It further provided that if the Plaintiff was "denied or forced

10   to turn down employment consistent with [his] abilities and education solely because of

11   provisions [of the covenant], [he would] immediately give 3M the name of the person or

12   organization whose employment [he] was denied or forced to turn down and the related

13   circumstances."  *Id.*  The covenant provided that its provisions "shall thereafter bind [the

14   Plaintiff] only as long as 3M shall make payments to [him] equal to [his] monthly base pay at

15   termination for each month of unemployment . . . unless 3M gives [him] express written

16   permission to accept available employment or gives [him] a written release of [his] obligations"

17   under the covenant.  *Id.*  In the Employment Agreement, Plaintiff Culver also agreed to not use

18   or disclose 3M's confidential information and that certain conditions apply to any inventions he

19   may create or work on while at 3M.  *Id.* at 3-4.

20        On June 30, 2023, the Plaintiff's employment was terminated by layoff.  Dkt. 15 at 5.

21   The Plaintiff received a severance package and signed a General Release of Claims.  *Id.*  The

22   General Release of Claims provided that the Plaintiff could not seek or accept employment from

23   3M or a subsidiary for six months.  Dkt. 15-5 at 2.  The Plaintiff contends in his Amended

24

1  Complaint that this restriction severely limited his employment options.  Dkt. 15 at 5.  After he

2  signed the release, 3M sent the Plaintiff a letter to "remind [him] of [his] continuing obligations

3  to 3M under the terms of the Employee Agreement."  Dkt. 15-3 at 1.  It reminded him of his

4  "ongoing duty of confidentiality and non-disclosure with respect to . . . confidential

5  information."  *Id.*  The letter reminded him to ensure that 3M's tangible property was returned.

6  *Id.*  It further provided:

7  > Finally, you are obligated to inform any new employer of your Agreement with
> 3M, and to provide that employer with a copy of the Agreement prior to accepting
8  > employment.  On this same point, please remember your two-year obligation not
> to accept employment with a [competitor], as defined in your Agreement, without
9  > 3M's express, written permission.

10  *Id.*

11  The Amended Complaint alleges that after his employment was terminated, the Plaintiff

12  "was contacted with inquires related to potential business opportunities or employment within

13  the industry."  Dkt. 15 at 6.  After receiving 3M's letter, the Plaintiff states that he "informed the

14  parties of 3M's clear intent to take legal action, should [he] breach [the non-compete covenant]."

15  *Id.*  The Plaintiff maintains that this "effectively chill[ed] or stopp[ed] any further

16  communications with potential employers or business relations."  *Id.*

17  On September 4, 2023, the Plaintiff was offered a position with another company.  Dkt.

18  15 at 6 and 15-6 at 3.  He contacted 3M on September 8, 2023.  Dkt. 15-6.  In an email attached

19  to the Amended Complaint, on September 18, 2023, Mark Shannon of 3M's Human Resources

20  department, wrote the Plaintiff and discussed the "pay continuation provisions" of the

21  Employment Agreement.  Dkt. 15-6 at 5-6.  Mr. Shannon additionally wrote:

22  > Under paragraph 3(F)(4) you must also separately (and as a proactive and
> preliminary step) send 3M information regarding any job offer you receive that
23  > you believe may be with a [competitor] for 3M review.  When doing so, please

24

ORDER ON DEFENDANT'S MOTIONS TO DISMISS - 5

send the specific offer letter you receive, or relevant excerpts and the job title and
description so 3M may fairly evaluate the same.

*Id*.  He further noted that to date "3M has not received any of the above information or notifications from you at any time . . . 3M has not refused to provide you permission to accept any specific opportunities or roles at other companies, and has not . . . corresponded with you concerning you 3M Employee Agreement." *Id.*  After the Plaintiff replied that he was asked by the potential employer to keep the discussions confidential (Dkt. 15-6 at 5) and 3M explained that it needed to know the name of the organization, name and nature of the role he'd been offered, and a brief description of his duties to assess whether the provisions in the Employee Agreement applied (Dkt. 15-6 at 4), the Plaintiff eventually responded that he had an offer from "United Supply Distribution," "Position: Operations Manager," and "Contact: Steve Burns" (Dkt. 15-6 at 3).  3M responded and asked for "(1) position offered title, (2) nature of the position, (3) description of the position duties, [and] (4) any other information [Plaintiff Culver felt was] relevant for [3M] to review and consider from this employer." Dkt. 15-6 at 2.  On September 21, 2023, the Plaintiff responded, arguing that the Employee Agreement's requirements that he provide the name of the organization and "the related circumstances" of the offer did not include all the information demanded by 3M.  *Id*.  The Plaintiff provided additional information, however.  *Id.*

On September 27, 2023, Mr. Shannon of 3M emailed the Plaintiff and indicated that 3M was providing him with a limited waiver "so that [he could] accept the Operations Manager role at United Supply Distribution."  Dkt. 15-4 at 5.  That September 27, 2023 limited waiver specifically provided:

> 3M is willing to grant you a limited waiver of the non-competition covenant
> contained in Section 3(F) of your Employee Agreement for the sole purpose of
> allowing you to accept the Operations Manager position with United Supply

ORDER ON DEFENDANT'S MOTIONS TO DISMISS - 6

Distribution. This limited waiver is conditioned upon your assurance that you understand, and will continue to comply with, the remaining provisions in your 3M Employee Agreement, which remain in full force and effect, and which include, without limitation, the following:

- An obligation never to use or disclose 3M's "Confidential Information" as that term is defined in your Employee Agreement.
- A two-year obligation not to directly or indirectly (1) solicit, entice or encourage any 3M employee to terminate or leave the employment of 3M and/or (2) offer to employ or retain - as an employee, independent contractor, consultant, agent or in any other capacity - any 3M employee.
- A two-year obligation to immediately disclose to 3M information regarding any services you propose to provide (including a role with United Supply Distribution other than the Operations Manager position) that you have reason to believe may violate your Employee Agreement in accordance with the terms therein.

The above-described limited waiver is further conditioned upon your certifying that you have made United Supply Distribution aware of your continuing obligations under your 3M Employee Agreement, and that United Supply Distribution will not induce, encourage, or knowingly permit you to violate those obligations and will not accept any 3M Confidential Information as that term is defined in your 3M Employee Agreement from you.

Dkt. 15-1 at 1.  The Plaintiff emailed 3M and responded, "after consultation and research . . . the Agreement is either void, or 3M must pay my salary."  Dkt. 15-4 at 4.  He contended that 3M owed him his salary beginning on July 1, 2023.  *Id.* at 2.  3M responded that it has not taken steps to enforce the non-compete covenant, and when the Plaintiff requested it, 3M gave him a limited waiver so that he could accept the job with United Supply Distribution.  *Id.* at 3.  It denied owing him additional pay.  *Id.*

The Plaintiff alleges in his Amended Complaint that he was forced to turn the offer down "due to the intrusive nature of the Defendant's inquires into the potential role and the restrictive and overreaching compromise offer in the form of a Limited Waiver . . . dated September 27, 2023.  Dkt. 15 at 6.

ORDER ON DEFENDANT'S MOTIONS TO DISMISS - 7

1    According to the Amended Complaint, a few weeks later, on October 16, 2023, the

2  Plaintiff alleges that he sent a letter to 3M demanding that it cease communications with 3rd

3  parties regarding the existence of the non-compete covenant, provide him a written release of his

4  right to seek work with any organization, issue "corrective communications to any third party to

5  whom the existence of the non-compete agreement may have been divulged," and pay him back

6  pay.  Dkt. 15 at 7.

7    The Amended Complaint alleges that "[a]fter learning of one business relationship, 3M

8  actively sought to prevent or control the relationship between Mr. Culver and the company."  *Id.*

9  at 8.  Plaintiff Culver contends that this "slowed" or deterred his efforts to seek employment with

10  3M's competitors.  *Id.*

11    The Plaintiff asserts that since his layoff, he has applied to over 80 positions and has not

12  received an offer of employment.  *Id*.  The Plaintiff alleges that his difficulty in finding work has

13  been exacerbated by the threat of legal action by 3M or further damage to his reputation should

14  he take a position with a competitor.  *Id.*  He asserts that there has been a "change in behavior

15  amounting to a refusal to communicate by companies who are in competition with 3M.  This

16  behavior began shortly after this matter came into dispute."  *Id.*

17    The Plaintiff makes claims against 3M for violation of RCW 49.62.020, by enforcing a

18  non-compete covenant after he was terminated by layoff without payment of wages.  Dkt. 15 at

19  9.  The Plaintiff also makes claims for breach of contract, the wrongful withholding of wages,

20  contrary to RCW 49.52.050, violation of Washington's Consumer Protection Act, RCW 19.86,

21  *et. seq*. ("CPA"), violation of Plaintiff's right to privacy pursuant to RCW 9.73.030, tortious

22  interference with business relations, breach of confidentiality, intentional infliction of emotional

23  distress, and contends that "3M's actions have detrimentally impacted Plaintiff's career prospects

24

1  and reputation" causing him harm.  *Id.*  He seeks declaratory and injunctive relief, damages, and

2  attorneys' fees (if incurred).  *Id.*

### DISCUSSION

### A.  JURISDICTION

5       The Court has jurisdiction over the case due to the amount in controversy and the

6  diversity of the parties' citizenship (Washington state and Delaware and Minnesota) under 28

7  U.S.C. § 1332.  Under the rule of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), federal courts

8  sitting in diversity jurisdiction, as here, apply state substantive law and federal procedural law.

9  *Gasperini v. Center for Humanities*, *Inc.*, 518 U.S. 415, 427 (1996).  In applying Washington

10  law, the Court must apply the law as it believes the Washington Supreme Court would apply it.

11  *Gravquick A/S v. Trimble Navigation Intern. Ltd.*, 323 F.3d 1219, 1222 (9th Cir. 2003).

### B.  MOTION TO DISMISS AND AMENDMENT STANDARDS

13       Fed. R. Civ. P. 12(b)(6) motions to dismiss may be based on either the lack of a

14  cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.

15  *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990).  Material allegations

16  are taken as admitted and the complaint is construed in the plaintiff's favor.  *Keniston v. Roberts*,

17  717 F.2d 1295 (9th Cir. 1983).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss

18  does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his

19  entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

20  elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-55

21  (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level,

22  on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.*

23

24

ORDER ON DEFENDANT'S MOTIONS TO DISMISS - 9

1    at 555.  The complaint must allege "enough facts to state a claim to relief that is plausible on its

2    face."  *Id*. at 547.

3         Pursuant to Fed. R. Civ. P. 15(a)(2), "a party may amend its pleading only with the

4    opposing party's written consent or the court's leave. The court should freely give leave when

5    justice so requires."  A motion to amend under Rule 15(a)(2), "generally shall be denied only

6    upon showing of bad faith, undue delay, futility, or undue prejudice to the opposing party."

7    *Chudacoff v. University Medical Center of Southern Nevada,* 649 F.3d 1143, 1152 (9th Cir.

8    2011).

9         Additionally, "a complaint filed by a *pro se* litigant, however inartfully pleaded, must be

10   held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*,

11   551 U.S. 89, 94 (2007).  As such, courts must give *pro se* litigants notice of deficiencies in their

12   complaint and an opportunity to amend unless it is "absolutely clear that the deficiencies of the

13   complaint cannot be cured by amendment." *Weilburg v. Shapiro*, 488 F.3d 1202, 1205 (9th Cir.

14   2007).

15        **C.  WASHINGTON'S NON-COMPETE STATUTE VIOLATION CLAIM**

16        As is relevant here, under Washington law, a non-compete covenant is "void and

17   unenforceable" against an employee: "[i]f the employee is terminated as the result of a layoff,

18   unless enforcement of the noncompetition covenant includes compensation equivalent to the

19   employee's base salary at the time of termination for the period of enforcement minus

20   compensation earned through subsequent employment during the period of enforcement."  RCW

21   § 49.62.020(c).  "A cause of action may not be brought regarding a noncompetition covenant

22   signed prior to January 1, 2020, if the noncompetition covenant is not being enforced."  RCW §

23   49.62.080(4).

24

ORDER ON DEFENDANT'S MOTIONS TO DISMISS - 10

1    The Plaintiff's claims for violation of RCW § 49.62.020(c) should be dismissed for

2  failure to state a claim.  The Employment Agreement which contained the non-compete covenant

3  was signed on April 1, 2013, well before January 1, 2020.  Accordingly, unless the non-compete

4  covenant is being "enforced," no cause of action may be brought pursuant to RCW §

5  49.62.080(4).  The statute does not define the term "enforced."  Merriam-Webster defines

6  "enforce" to mean "constrain" or "compel." *Enforce, Merriam-Webster Online Dictionary*,

7  https://www.merriam-webster.com/dictionary/enforce (last visited May 15, 2024).  Similarly,

8  Black's Law Dictionary defines "enforce" to mean "to put into execution; to cause to take effect

9  . . . to compel obedience to." *Enforce, Black's Law Dictionary* (6th ed. 1990).  The Washington

10  non-compete statute defines a "party seeking enforcement" as "the named plaintiff or claimant in

11  a proceeding to enforce a noncompetition covenant or the defendant in an action for declaratory

12  relief."  RCW § 49.62.010(6).  Use of the terms "plaintiff or claimant . . . or defendant" implies

13  that attempts to enforce a non-compete covenant must be in a court or some other dispute

14  resolution forum for the statute to apply.

15    Defendant 3M is not the plaintiff in this case.  In his response, the Plaintiff states that

16  "[i]n order to fully satisfy any potential confusion or misunderstanding, Plaintiff seeks

17  declaratory relief in the Amended Complaint, making the Plaintiff in this case the 'party seeking

18  enforcement' pursuant to RCW 49.62.010."  Dkt. 19 at 5.  The Plaintiff misapprehends this

19  provision.  He is not a party seeking to enforce the non-compete covenant.  The Plaintiff seeks

20  declaratory relief that it is invalid.

21    Defendant 3M is a "defendant in an action for declaratory relief" in this case.  However,

22  it has not taken action to enforce the non-compete covenant in this or other proceeding against

23  the Plaintiff.  It has not sought "to constrain" the Plaintiff from taking an offer of employment,

24

ORDER ON DEFENDANT'S MOTIONS TO DISMISS - 11

1   has not acted "to cause [the non-compete covenant] to take effect," and has not attempted to

2   "compel obedience to" the covenant in a legal action or other dispute resolution forum.  The

3   undisputed record demonstrates that rather than pay the Plaintiff, 3M released the Plaintiff from

4   the non-compete covenant so that he could accept the job with United Supply Distribution.  This

5   is not to say that if the Plaintiff accepted work with another company and Defendant 3M brought

6   an action to enforce the non-compete covenant that Defendant 3M would prevail.  This is

7   particularly true given RCW § 49.62.020(2)'s statutory requirement that there is a rebuttable

8   presumption that any non-compete covenant over 18 months is "unreasonable and

9   unenforceable."  It is the Plaintiff's obligation to allege sufficient facts which state a claim.  Fed.

10  R. Civ. P. 12(b)(6).  To do so under RCW § 49.62, 3M must be seeking to enforce the non-

11  compete covenant in this court or other dispute resolution forum.  There is no allegation that it is

12  doing so.

13          The Plaintiff points to new provisions in RCW § 49.62.080(4) which include the phrase

14  "if the noncompetition covenant is not being enforced **or explicitly leveraged**" to argue that 3M

15  violated the statute.  These amendments were passed by the legislature on March 13, 2024 and

16  specifically state that the new provisions are effective June 6, 2024.  WA LEGIS 36 (2024), 2024

17  Wash. Legis. Serv. Ch. 36 (S.S.B. 5935).  Even if the amendments were in effect, the Plaintiff

18  fails to point to any grounds from which to conclude that the new provisions retroactively apply.

19  Further, even if the statute were read to include the phrase "explicitly leveraged," the Plaintiff

20  has failed to allege facts which would sufficiently support his claim.

21          **D.  BREACH OF CONTRACT**

22

23

24

ORDER ON DEFENDANT'S MOTIONS TO DISMISS - 12

1    In Washington, "[a] breach of contract is actionable only if the contract imposes a duty,

2    the duty is breached, and the breach proximately causes damage to the claimant." *C 1031*

3    *Properties, Inc. v. First Am. Title Ins. Co.*, 175 Wn. App. 27, 33–34 (2013)(*cleaned up*).

4    The Plaintiff contends that 3M breached the Employment Agreement when it failed to

5    pay him in accordance with the non-compete covenant's requirements.  Dkt. 15.  The

6    Employment Agreement's non-compete covenant provided that if the Plaintiff was "denied or

7    forced to turn down employment" due to the covenant, and he gave 3M the name of the potential

8    employer and "the related circumstances," he was bound by the covenant's provisions "only as

9    long as" 3M made "payments to [him] equal to [his] monthly base pay at termination for each

10   month of unemployment . . . unless 3M [gave him] express written permission to accept

11   available employment or [gave him] a written release of [his] obligations" under the covenant.

12   Dkt. 11-1 at 4.

13   The Plaintiff has failed to allege facts to support element two, that 3M breached a duty it

14   owed him under the Employment Agreement.  The Agreement provided that after the Plaintiff

15   provided the name and circumstances of a potential job, 3M could either pay him his base pay

16   for each month of unemployment, give him permission to accept the employment, or release him

17   from the covenant.  The allegations in the Amended Complaint and its attachments show that 3M

18   gave him permission to accept employment with United Supply Distribution.  He has failed to

19   allege facts to support a claim that 3M breached the Employment Agreement.

20   The Plaintiff's Amended Complaint also refers to the "General Release of All Claims"

21   regarding the claim for breach of contract.  Dkt. 15.  The Plaintiff fails to identify which

22   provision of the "General Release of All Claims" created a duty that Defendant 3M breached.

23   This breach of contract claim should be dismissed.

24

ORDER ON DEFENDANT'S MOTIONS TO DISMISS - 13

1

**E.  WITHHOLDING OF WAGES CLAIM**

2

The Plaintiff asserts a claim under RCW 49.52.050, which prohibits the willful

3

underpayment of wages due an employee.  Dkt. 15.  The Plaintiff bases his claim on 3M's failure

4

to adhere to RCW 49.62.020(c) (Washington's law on non-compete covenants) and his breach of

5

contract claims. *Id.*

6

The Plaintiff's claims under RCW 49.62.020(c) and for breach of contract fail and should

7

be dismissed under Fed. R. Civ. P. 12(b)(6) as stated in sections II.C. and II.D. above.  The

8

Plaintiff has failed to allege facts from which to conclude that 3M willfully withheld wages due

9

the Plaintiff. Accordingly, his wage claim, which is based on violations of RCW 49.62, *et. seq*.

10

and his breach of contract claim, should be dismissed for failure to state a claim.

11

**F.  CPA VIOLATION CLAIM**

12

Violations of Washington's CPA require a plaintiff to establish "five distinct elements:

13

(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest

14

impact; (4) injury to plaintiff in his or her business or property; (5) causation." *Hangman Ridge*

15

*Training Stables, Inc. v. Safeco Title Ins. Co*., 105 Wash.2d 778, 780 (1986).

16

Under the first element, "unfair or deceptive act or practice," a "claim under the

17

Washington CPA may be predicated upon a per se violation of statute, an act or practice that has

18

the capacity to deceive substantial portions of the public, or an unfair or deceptive act or practice

19

not regulated by statute but in violation of public interest."  *Schiff v. Liberty Mut. Fire Ins. Co*.,

20

542 P.3d 1002, 1006 (Wash. 2024)(*internal quotation marks and citation omitted*).

21

As to the first element, in his response, the Plaintiff argues that Defendant 3M "enforced

22

a non-compete agreement against a laid-off employee without providing the required

23

compensation, constituting an unfair or deceptive act or practice."  Dkt. 19 at 8.  To the extent

24

ORDER ON DEFENDANT'S MOTIONS TO DISMISS - 14

1    that the Plaintiff relies on a violation of  RCW 49.62.020(c), he has failed to allege sufficient

2    facts to establish a per se violation of the statute, as explained above in Section II.C.  Defendant

3    3M is not "enforcing" the covenant for purposes of the statute.  Moreover, the Plaintiff has failed

4    to allege facts from which to conclude that 3M's actions have "the capacity to deceive

5    substantial portions of the public."  The allegations in the Amended Complaint only relate to

6    3M's conduct with the Plaintiff regarding their contract.  The Plaintiff has also failed to allege

7    facts to show that 3M's conduct was "not regulated by statute but was in violation of the public

8    interest."  In some cases, non-compete covenants are still enforced in Washington, even after

9    passage of RCW § 49.62.  *See A Place for Mom v. Perkins*, 475 F. Supp. 3d 1217, 1227 (W.D.

10   Wash. 2020)(granting preliminary injunction to enforce non-compete covenant).  The Plaintiff

11   fails to allege sufficient facts as to the first element.  His CPA claim should be dismissed.

12              **G.  PRIVACY VIOLATION CLAIM BASED ON RCW 9.73.030**

13             Under RCW 9.73.030, with certain exceptions not applicable here, it is "unlawful for any

14   individual . . . [or] corporation . . . to intercept, or record any: . . . Private communication

15   transmitted by telephone, telegraph, radio, or other device between two or more individuals . . ."

16   without obtaining the participants' consent. RCW 9.73.030(1)(a).

17             The Plaintiff's claim for violation of RCW 9.73.030 should be dismissed.  The Plaintiff

18   has failed to allege any plausible facts in support of his claim.

19         **H.  TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS CLAIM**

20             In Washington, a plaintiff claiming tortious interference with a contractual relationship or

21   business expectancy must prove five elements:

22             (1) the existence of a valid contractual relationship or business expectancy; (2)
             that defendants had knowledge of that relationship; (3) an intentional interference
23             inducing or causing a breach or termination of the relationship or expectancy; (4)

24

ORDER ON DEFENDANT'S MOTIONS TO DISMISS - 15

that defendants interfered for an improper purpose or used improper means; and
(5) resultant damage.

*Pac. Nw. Shooting Park Ass'n v. City of Sequim*, 158 Wn.2d 342, 351 (2006); *Greensun Grp., LLC v. City of Bellevue*, 7 Wn. App. 2d 754, 768 (2019).

As to the first element, it is not clear from the Amended Complaint to which business expectancy the Plaintiff is referring.  To the extent the Plaintiff bases the claim on the potential job offer from United Supply Distribution, the Plaintiff has failed to plead facts that could support a finding that Defendant 3M intentionally interfered with that relationship causing a termination of that relationship (element three), or that it "interfered for an improper purpose or used improper means" (element four).  The Plaintiff makes vague references to Defendant 3M's attempts to control or interfere with a business relationship but fails to explain which business and how. Defendant 3M's motion to dismiss this claim should be granted.

## I.   BREACH OF CONFIDENTIALITY CLAIM

In his Amended Complaint's section entitled "Cause of Action," the Plaintiff asserts that "3M has committed a breach of confidentiality by communicating to third parties the existence of an agreement."  Dkt. 15 at 9.

This claim should be dismissed for failure to state a claim.  The Plaintiff fails to allege facts to support this claim.  He does not explain who the "third parties are" or to what "agreement" he refers.

Further, Washington has not recognized a common law breach of confidentiality as a cause of action.  *See generally Hines v. Todd Pacific Shipyards Corp.*, 127 Wn. App. 356, 370 (2005); *Nienaber v. Overlake Hosp. Med. Ctr.*, 2:23-CV-01159-TL, 2024 WL 2133709, at *11 (W.D. Wash. May 13, 2024).  The Plaintiff does not point to a provision in a contract that

1   supports the contention that Defendant 3M owed him a duty of confidentiality.  The Plaintiff's

2   claim for breach of confidentiality should be dismissed.

3            **J.   INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM**

4            In Washington, the tort of intentional infliction of emotional distress, also referred to as

5   outrage, requires the proof of three elements:  "(1) extreme and outrageous conduct, (2)

6   intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe

7   emotional distress."  *Kloepfel v. Bokor*, 149 Wn.2d 192, 195 (2003).  Any claim for outrage

8   "must be predicated on behavior so outrageous in character, and so extreme in degree, as to go

9   beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in

10  a civilized community."  *Id.* at 196 (*cleaned up*).

11           Although Defendant 3M moves for dismissal of the Amended Complaint, the parties do

12  not directly address this claim.  The Plaintiff, however, has not alleged any facts which would

13  support a finding that Defendant 3M's conduct was "beyond all possible bounds of decency,"

14  was "atrocious," or "utterly intolerable in a civilized community."  *Kloepfel* at 196.  This claim

15  should be dismissed.

16           **K.  CONCLUSION**

17           Defendant 3M's motion to dismiss the Amended Complaint should be granted under Fed.

18  R. Civ. P. 12(b)(6).  The Plaintiff's claims for violation of RCW 49.62, *et. seq.*, breach of

19  contract, the wrongful withholding of wages, contrary to RCW 49.52, *et. seq.*, violation of

20  Washington's CPA, RCW 19.86, violation of Plaintiff's right to privacy pursuant to RCW 9.73,

21  *et. seq.*, tortious interference with business relations, breach of confidentiality and outrage should

22  be dismissed with prejudice and without leave to amend.  Amendment would be futile as to these

23

24

claims.  It is "absolutely clear" that the deficiencies of these claims cannot be cured by amendment.  *Weilburg* at 1205.

Further, Defendant 3M's Motion to Stay Discovery Pending Decision on Defendant's Motion to Dismiss (Dkt. 21) should be stricken as moot.  This case should be closed.

### ORDER

It is **ORDERED** that:

- Defendant 3M's motion to strike (Dkt. 17) **IS GRANTED;**
  - Defendant 3M's Motion to Dismiss or Alternatively Strike Paragraph 5 of Plaintiff's Complaint (Dkt. 10) **IS STRICKEN**; and
- 3M's Motion to Dismiss Plaintiff's Amended Complaint (Dkt. 18) **IS GRANTED** and Plaintiff's claims **ARE DISMISSED WITH PREJUDICE AND WITHOUT LEAVE TO AMEND**;
- Defendant 3M's Motion to Stay Discovery Pending Decision on Defendant's Motion to Dismiss (Dkt. 21) **IS STRICKEN AS MOOT;** and
- This case **IS CLOSED.**

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 20th day of May, 2024.

ROBERT J. BRYAN
United States District Judge

ORDER ON DEFENDANT'S MOTIONS TO DISMISS - 18